CITY OF COVINGTON

V.

APB WHITING, INC.

Record No. 840927

September 4, 1987

Present: All the Justices

*D. Stan Barnhill; Thomas T. Lawson (Woods, Rogers & Hazlegrove,* on briefs), for appellant.

*Michael McHale Collins (J. Gregory Mooney; Collins, Crackel & Mooney,* on brief), for appellee.

THOMAS, J., delivered the opinion of the Court.

The central issue in this appeal is whether the Covington City Council's decision to deny APB Whiting, Inc.'s (Whiting) application to rezone a certain parcel of land was fairly debatable. Whiting applied to rezone the parcel of land from residential to commercial. The local planning commission voted in favor of the rezoning. The city council, by a tie vote, denied the rezoning. Whiting filed a declaratory judgment action in the trial court. The trial court ordered the rezoning. The city appeals; we reverse.

The pertinent events began in 1982. At that time, Whiting owned property designated as Lot No. 14, at the intersection of East Madison Street and Carpenter Drive in the Fairlawn subdivision in the City of Covington. Lot 14 was zoned commercial and was the site of a service station. South of Lot 14 along Carpenter Drive was Lot 13A, which had 25 feet of frontage on Carpenter Drive. Next to Lot 13A, to the south, was Lot 13, which had 41 feet of frontage on Carpenter Drive. Lot 12 had 50 feet of front-

age on Carpenter Drive. There was a home on Lot 11. Lot 12 served as the side yard to the house on Lot 11. Lots 12, 13, and 13A were vacant. Thus, 116 feet of vacant land lay between the boundaries of commercial Lot 14 and residential Lot 11. Whiting owned Lots 14, 13A, and 13.

In November 1982, a local bank requested a building permit to construct an automatic drive-in teller machine on portions of Lot 14 and 13A. The Covington Building and Zoning Administrator consulted a 1975 map in his office and concluded therefrom that Lot 13A was zoned commercial; he granted the building permit. Thereafter, upon receipt of a citizen's complaint concerning the construction, the administrator re-checked his records and concluded that Lot 13A was zoned residential; he revoked the building permit.

On February 15, 1983, a new zoning ordinance went into effect in Covington. It showed Lot 14 as commercial and Lots 13A and 13 as residential. By application filed March 2, 1983, Whiting requested that Lots 13A and 13 be rezoned from residential to commercial.

The matter was referred to the Covington Planning Commission. The commission heard testimony on both sides of the issue. It recommended, by a 5-2 vote, that Lot 13A be rezoned commercial. It recommended, by unanimous vote, that Lot 13 remain residential.

The matter was then considered by the city council on April 12, 1983. There, petitions signed by 90 residents who lived near the property and opposed the rezoning were presented to the council. The opposition by the petitioners was based on a concern for their property values. One witness expressed concern that the rezoning would open the area to other businesses and create traffic problems. The mayor was concerned about encroachment upon the residential area and the danger of setting a precedent. Conditional zoning of the property was discussed. However, a representative of Whiting stated that his company did not want conditional zoning. He asked that the application be granted as presented. The council voted 2-2. However, because a petition of protest had been signed by a majority of the residents, a three-fourth's vote of the five-member council was required for adoption of the rezoning. The application failed.

Whiting then filed a declaratory judgment action to secure the rezoning of Lots 13 and 13A. A hearing was held on November 9,

1983. Dennis Murphy, a manager for Whiting, testified that as long as the property was zoned residential it had no value for Whiting.

Two expert witnesses testified on Whiting's behalf. The first witness said Lot 13A must be combined either with Lot 14 to the north or Lot 13 to the south in order for it to be used. He said Lot 13A had no value by itself. He testified further, however, that if Lot 13A were "aggregated" with Lot 13, the frontage would be only 66 feet, while the zoning ordinance required a 75-foot lot with a 15-foot side yard for the construction of a home. As a result, according to the witness, a zoning variance would be required before a home could be built on Lots 13 and 13A used together.

On a separate point, the witness admitted that the intersection at which the property is located was very busy. He said this was good for commercial property but bad for residential property.

Whiting's other expert witness said that by itself, Lot 13A had value only as a garden spot. He placed that value at $1,000. He said that if Lot 13A were "aggregated" with Lot 14 it would be worth $10,000. He stated further that rezoning Lot 13A would not adversely affect nearby property but that rezoning Lot 13 would have a negative effect on adjacent residential property. He also testified that even if Lot 13A were rezoned, there would be a 91 foot buffer between Lot 13A and Lot 11 which is the next lot on which a house is located. He suggested that Lot 13A should be rezoned commercial because no one would want to build a nice house on Lots 13-13A since it was next door to Lot 14 which contained a gas station.

The same expert admitted further, however, that Lot 13A could be "aggregated" in either direction, either north with the commercial property or south with the residential property. He also admitted that Lots 13 and 13A could be combined with Lot 12 to make a "nice sized" residential lot.

The city called as witnesses the zoning administrator and the mayor. The zoning administrator testified that the map he relied upon in issuing the building permit was not an official zoning map and further that the map was in error in showing Lots 13 and 13A to be commercial. He testified that he checked the zoning records back to 1957 — when Covington enacted its first ordinance — and concluded that Lots 13 and 13A had always been zoned residential. Further, the zoning administrator made clear that under

the 1983 ordinance Lots 13 and 13A continued to be listed as residential lots.

The mayor was permitted to testify concerning events which transpired at the council meeting during which the rezoning application was denied. He recounted that conditional zoning had been suggested as a possible alternative approach but that Whiting had rejected this approach requesting instead that its application be voted on in its original form. He stated that the matter was controversial and received "a great deal of consideration" from the council "after a lot of input from many people." He stated that in his view "the case had merit both ways." He described the Fairlawn subdivision as "a desirable area to live in in Covington." He expressed concern that to rezone might amount to "spot zoning" that would undermine the property values of the homeowners.

The mayor also noted that two other witnesses had testified before council and both had expressed concern about traffic congestion, with one also expressing concern about too much lighting. From his own perspective, the mayor was concerned about the precedent that a rezoning would establish. He considered the prospect an encroachment on the residential area that would lead to erosion of the residential nature of the area. He noted further that the intersection in question was probably "one of the most hazardous in Covington" and was the site of a "lot of traffic accidents." In his view, putting another facility at that intersection would contribute to the congestion. He was also concerned about the limited view available to motorists leaving the subject property heading south out of Covington.

The trial court ruled that the lots in question had been zoned residential since 1957. Further, the trial court found that the 1975 map which caused the zoning administrator mistakenly to issue a building permit contained a clerical error. The trial court noted in a letter opinion that Whiting opposed the use of conditional zoning as a means of securing construction of the drive-in teller machine. With regard to Lot 13, the trial court concluded that the council's decision not to rezone was fairly debatable because of the need for a buffer between the commercial property and the residential property. However, with regard to Lot 13A, the trial court ruled as follows:

> With regard to lot 13A, the Court is of the opinion that the action of council bears no reasonable or substantial rela-

tion to the public health, safety, moral or general welfare that could not be corrected by conditional rezoning, that a compelling need for rezoning is shown and that there has been a clear demonstration that residential zoning is not reasonable or appropriate.

By order dated January 9, 1984, the trial court remanded the matter to city council for reconsideration consistent with the trial court's letter opinion. The council refused to change its vote. Thereafter, by order dated March 30, 1984, the trial court declared void the residential zoning of Lot 13A and permanently enjoined the city from interfering with the use of that lot as commercial property. The trial court's action in this regard constituted reversible error.

■■■ The disposition of this appeal is governed by familiar principles of law. First, zoning decisions by local governing bodies are legislative decisions and are presumed correct. *Loudoun County v. Lerner*, 221 Va. 30, 34, 267 S.E.2d 100, 102 (1980). The presumption of correctness stays with the local governing body's original decision until the highest court to which the matter is appealed decides the issue. *Id.* at 34-35, 267 S.E.2d at 102. The party attacking the zoning has the burden of establishing the unreasonableness of the existing zoning as well as the reasonableness of the proposed zoning. *Id.* Legislative action is reasonable if the matter under consideration is "fairly debatable." *Id.* An issue is fairly debatable where the evidence offered in support of the opposing views would lead objective and reasonable persons to different conclusions. *Id.*

In this case, as the mayor testified, there were arguments to be made on both sides of the issue. As one of Whiting's witnesses testified, Lot 13A could be used with Lot 14 for commercial purposes or with Lot 13 for residential purposes. Lot 13A then was pivotal and lay on a critical boundary. The City's evidence established, without contradiction, that the intersection was heavily travelled, that many accidents occurred there, that the view from the lot in question to the south was obstructed, and that congestion would increase. Whiting's evidence established that traffic congestion was good for commercial development but detrimental to a residential area. The City was also concerned about the precedent such rezoning would establish.

■ The basic question in this case was where to draw the dividing line between commercial property and residential property. The precise issue was presented in *Fairfax County* v. *Pyles*, 224 Va. 629, 300 S.E.2d 79 (1983). There, we noted that fixing the specific location of boundary lines between zoning districts is a legislative function that is by nature arbitrary. *Id.* at 638, 300 S.E.2d at 84. We pointed out in *Pyles* that where two uses of the property are reasonable, the issue of which use to choose is fairly debatable.

■ In our opinion, this was a classic case of a fairly debatable issue. We hold that the trial court erred in ruling that Lot 13A's residential zoning was void and erred in permanently enjoining the City from interfering with the commercial use of the property.

Whiting assigned cross-error with regard to certain matters.* Whiting contended that the trial court erred in finding that the 1975 map relied upon by the zoning administrator in issuing the original building permit in 1982 contained a clerical error, and further erred in finding that that map was not an integral part of the City's zoning ordinance. These assignments of cross-error are without merit.

■ Whiting seeks to make the 1975 map binding on the City in an effort to contend that Lots 13 and 13A were zoned commercial. The evidence in the record is entirely to the contrary. The 1975 map was not an official map. It was never approved by the City Council as part of the ordinance and it bore no such inscription. It was a mere reference tool which turned out to be in error. An erroneous reference map cannot alter the terms of a properly adopted zoning ordinance.

■ Finally, Whiting contends that the 1983 zoning ordinance, under which he filed his application for rezoning, was invalid because it was not properly enacted. However, Whiting's declaratory judgment action did not attack the council's failure to rezone on this basis. Though facts concerning the notice given prior to adoption of the 1983 zoning ordinance were adduced, that theory was not asserted as a basis for relief in the trial court and we will not entertain it for the first time on appeal.

■ Moreover, even if the 1983 ordinance had a defect in its enactment, that would be of no avail to Whiting because Lots 13

---

* Originally, Whiting contended that the trial court erred in finding that the issue concerning the rezoning of Lot 13 was fairly debatable. During oral argument, Whiting's counsel abandoned this position.

and 13A were zoned residential under the previous ordinance as well. In addition, Whiting cannot properly ask this Court to uphold the trial court's ruling regarding Lot 13A under the 1983 ordinance while at the same time arguing that the 1983 ordinance is invalid.

For all the foregoing reasons, the judgment of the trial court will be reversed and final judgment entered here on behalf of the City.

*Reversed and final judgment.*